UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 08-10174 |
| | ) | Chapter 7 |
| RANDALL JOSEPH UNGER | ) | |
| dba Lake Area Livestock Marketing | ) | |
| SSN/ITIN xxx-xx-0965 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JOYCE LILENE UNGER | ) | |
| SSN/ITIN xxx-xx-8403 | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| FORREST C. ALLRED, Trustee | ) | Adv. No. 09-1019 |
| | ) | |
| Plaintiff | ) | |
| | ) | DECISION RE: TRUSTEE-PLAINTIFF'S |
| -vs- | ) | MOTION FOR JUDGMENT ON |
| | ) | THE PLEADINGS REGARDING |
| GREAT WESTERN BANK | ) | CLAIM AGAINST DEFENDANT |
| and CRONIN FARMS, INC. | ) | GREAT WESTERN BANK |
| | ) | |
| Defendants. | ) | |

        The matter before the Court is Trustee-Plaintiff Forrest C. Allred's Motion for

Judgment on the Pleadings (doc. 11), which the Court, in compliance with

Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(d), is treating as a motion for summary

judgment.[1]  This is a core proceeding under 28 U.S.C. § 157(b)(2).  This decision and

accompanying order shall constitute the Court's findings and conclusions under

Fed.R.Bankr.P. 7052.  As set forth below, the motion will be granted, and Defendant

Great Western Bank will be ordered to turn over the bankruptcy estate funds described

in Trustee Allred's complaint.

---

        [1] In its response to Trustee-Plaintiff Allred's motion, Defendant Great Western Bank raised new legal arguments, including a claimed right of setoff, that were not distinctly pled in its answer, and it submitted an affidavit of one of its officers. Pursuant to Fed.R.Civ.P. 12(d), the Court notified the parties it would treat Trustee-Plaintiff Allred's motion as a motion for summary judgment and gave them an opportunity to present any additional material that was pertinent to Trustee-Plaintiff Allred's motion.  Neither party chose to add to the record.

I.

Randall Joseph Unger ("Debtor") and Joyce Lilene Unger (collectively, "Debtors") filed a chapter 7 petition in bankruptcy on December 12, 2008. Forrest C. Allred was appointed the trustee. Trustee Allred filed the instant adversary complaint (doc. 1) against Great Western Bank ("Bank") and Cronin Farms, Inc. ("Cronin Farms") to recover surplus funds remaining in Bank's possession after liquidation of its collateral and payment in full of its claim against Debtor ("surplus"). Trustee Allred included Cronin Farms in the action because Bank had advised him it was unwilling to turn over the surplus while Cronin Farms' state court lawsuit against Bank, described more fully below, was pending.

The facts giving rise to Cronin Farms' state court lawsuit – at least those that are material to this adversary proceeding – are not in dispute. In November 2008, Debtor brokered a sale of cattle owned by Cronin Farms. For tax reasons, Cronin Farms asked Debtor to hold the proceeds. Cronin Farms did not take a security interest in the proceeds. Sometime after December 1, 2008, Cronin Farms demanded payment. However, when Debtors filed bankruptcy on December 12, 2008, Debtor had still not paid Cronin Farms.

On or about December 9, 2008, Bank advised Cronin Farms Debtor did not have sufficient funds or credit to pay Cronin Farms. Cronin Farms then made arrangements with Bank or with Debtor to have Bank pay Cronin Farms' bank when Debtor had sufficient funds or sufficient credit from Debtor's revolving line of credit with Bank. Sufficient credit became available on December 15, 2008. Bank's representative delivered a check for $171,615.21 to Cronin Farms' bank. While Bank's representative was making the delivery, Bank learned of Debtors' bankruptcy. Bank's representative returned to Cronin Farms' bank and retrieved the check. Some time later, Cronin Farms commenced its state court lawsuit against Bank, alleging Bank had

acted wrongfully in retrieving the check.  To this Court's knowledge, the state court lawsuit is still pending.

In its answer to Trustee Allred's complaint (doc. 5), Cronin Farms said this Court lacked jurisdiction over its state court lawsuit because the subject transaction was post-petition.  Cronin Farms also said it was making no claim – except to the extent it held a general unsecured claim against Debtor – against the surplus.

In its answer to Trustee Allred's complaint (doc. 6), Bank admitted virtually all of Trustee Allred's allegations.  It also clarified it was holding $60,987.21 in surplus proceeds, not the slightly smaller amount Trustee Allred referenced in his complaint. Bank denied Trustee Allred's allegation that it had been paid in full and made reference to its answer in a related adversary proceeding, Adv. No. 09-1018, in which the distribution of certain cattle sale proceeds remains at issue.[2]  In its prayer for relief, Bank argued, apparently alternatively, if Cronin Farms obtains a judgment against Bank in the state court lawsuit, Trustee Allred should be able to recover that money from Cronin Farms, Bank should be able to apply the $60,987.21 surplus against any judgment Cronin Farms obtains against it, or Bank should be first in line for the proceeds at issue in Adv. No. 09-1018.[3]

Trustee Allred filed a motion for judgment on the pleadings, seeking a

---

[2] In paragraph 5 of its answer in Adv. No. 09-1018, Bank admitted it has been paid in full ("Great Western Bank has completed the liquidation of the debtors' assets which were collateral of Great Western Bank, except for the livestock and proceeds from the sale of livestock, to pay Great Western Bank's secured claim in full. Currently, Great Western Bank is holding $60,987.21 as surplus of its liquidation of such collateral."). However, in paragraphs 6 and 7 of its answer in Adv. No. 09-1018, Bank explained if Cronin Farms prevailed in the state court lawsuit, Bank would need additional proceeds – from the surplus and from the cattle sale proceeds at issue in that adversary – to pay its secured claim in full.  Whether Bank is presently entitled to retain the surplus is, of course, the issue to be decided in this adversary proceeding.

[3] Bank also argued this Court should determine Cronin Farms holds only a general unsecured claim against the bankruptcy estate.  Cronin Farms has not suggested otherwise.

declaration Bank has been paid in full and ordering Bank to remit the surplus to him (doc. 11).  He argued Bank has no claim against the bankruptcy estate or the surplus for any liability it may incur arising from the December 15, 2008 check transaction with Cronin Farms because that transaction occurred post-petition and was made without Court approval.

In its response to Trustee Allred's motion, Bank first asked the Court to stay this adversary proceeding until the state court lawsuit was resolved.  It then claimed it held a right of setoff.  It also argued if it were found liable to Cronin Farms in the state court, it would be subrogated to Cronin Farms' claim against Debtor and could then set off that claim against the surplus.  Finally, it argued any payment it made to Cronin Farms "might" be chargeable against Debtor's revolving line of credit.

In his reply, Trustee Allred argued Bank would hold no setoff rights because any claim based on the outcome of Cronin Farms' state court lawsuit against Bank would arise post-petition, and under 11 U.S.C. § 553, the debts to be set off must both arise pre-petition.

II.

Summary judgment is appropriate when "there is no genuine issue [of] material fact and . . . the [moving party] is entitled to judgment as a matter of law." Fed.R.Bankr.P. 7056 and Fed.R.Civ.P. 56(c).  An issue of material fact is *genuine* if it has a real basis in the record.  *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (quotes therein).  A genuine issue of fact is *material* if it might affect the outcome of the case.  *Id.* (quotes therein).

The matter must be viewed in the light most favorable to the party opposing the motion.  *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997).  Where motive and intent are at issue, disposition of the matter by summary judgment may be more difficult. *Cf. Amerinet, Inc. v. Xerox Corp.,* 972 F.2d 1483, 1490 (8th Cir. 1992) (citation

omitted).

The movant meets his burden if he shows the record does not contain a genuine issue of material fact and he points out that part of the record that bears out his assertion. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997) (quoting therein *City of Mt. Pleasant, Iowa v. Associated Electric Coop.*, Inc., 838 F.2d 268, 273 (8th Cir. 1988)). No defense to an insufficient showing is required. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161 (1970) (citation therein); *Handeen*, 112 F.3d at 1346.

If the movant meets his burden, however, the nonmovant, to defeat the motion, "must advance specific facts to create a genuine issue of material fact for trial." *Bell*, 106 F.3d at 263 (quoting *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 64 F.3d 1202, 1211 (8th Cir. 1995)). The nonmovant must do more than show there is some metaphysical doubt; he must show he will be able to put on admissible evidence at trial proving his allegations. *Bell*, 106 F.3d at 263 (citing *Kiemele v. Soo Line R.R. Co.*, 93 F.3d 472, 474 (8th Cir. 1996), and *JRT, Inc. v. TCBY Systems, Inc.*, 52 F.3d 734, 737 (8th Cir. 1995)).

III.

The parties agree no facts material to Trustee Allred's complaint are in dispute. When those facts and the applicable law are considered, it is clear Trustee Allred is entitled to summary judgment as a matter of law and Bank may not retain any proceeds from the sale of bankruptcy estate property in excess of its fully secured pre-petition claim.

Stay. In its response to Trustee Allred's motion, Bank first argued this adversary proceeding should be stayed until Cronin Farms' state court lawsuit against Bank is resolved because "[Bank] is being sued over the same transaction in a state court . . ., and should not have to risk inconsistent rulings in the two courts." The two proceedings, however, involve two very different disputations. Trustee Allred

seeks recovery of bankruptcy estate proceeds from the sale of estate property that are in excess of Bank's fully secured pre-petition claim. Cronin Farms, on the other hand, seeks damages that allegedly resulted from a post-petition transaction – between Bank and Cronin Farms – that it claims went awry. The two matters are not intertwined by facts or law. The post-petition transaction between Bank and Cronin Farms did not arise because Bank was holding the surplus bankruptcy estate funds, and the outcome of the state court matter is not dependent on whether Bank retains possession of the surplus bankruptcy estate funds. Accordingly, the Court will not stay this adversary proceeding pending the outcome of the state court lawsuit.

Recovery from Cronin Farms. Bank did not provide any statutory or case law support for its theory that Trustee Allred could somehow recover from Cronin Farms any damages Bank may be ordered to pay Cronin Farms in the state court lawsuit or in this adversary proceeding. Consequently, the Court will not give this theory further consideration.

Secured claim. By its own admission, Bank has been paid in full on its fully secured claim against Debtor. It has not identified any facts or provided any statutory or case law authority to support its contention that a post-petition judgment against it in state court, arising from a post-petition transaction with Cronin Farms, would entitle it to additional bankruptcy estate funds.

Cronin Farms' state court complaint has four counts: fraud, conversion and theft by deception, wrongful refusal to pay cashier's check, and punitive damages. Each count is premised on Bank's alleged wrongful conduct in retrieving the check in question, not on Debtor's pre-petition liability to Cronin Farms. Should the state court find in favor of Cronin Farms, the judgment against Bank will be for damages to Cronin Farms caused by Bank, not for Debtor's pre-petition liability to Cronin Farms.

Bank has also not explained how any sums Bank might subsequently pay to

Cronin Farms on account of a state court judgment premised on Bank's alleged wrongful conduct "might" be chargeable against the line of credit when any use of the line of credit post-petition was not authorized by the Bankruptcy Court.[4]  11 U.S.C. § 364(b), (c), and (d).  Bank has not pointed the Court to – and the Court is unaware of – any authority that would permit Bank to do so.

        <u>Subrogation and setoff</u>.  In both its answer and its response to Trustee Allred's motion, Bank argued if it is found liable post-petition to Cronin Farms, Bank would be entitled to apply or set off the surplus estate funds it is now holding.[5]  In its response, Bank said,

> This is true because if [Bank] pays Cronin Farms' claim, it has in effect paid a pre-petition claim of [Debtor], and it has the right under principles of subrogation, including but not limited to those set forth in 11 U.S.C. § 509, to make that claim back against the [Debtor] bankruptcy estate.

Setoff and subrogation, however, are separate remedies, neither of which applies here.

        Section 553(a) of the Bankruptcy Code provides a creditor may set off mutual pre-petition debts between the creditor and the debtor.  *United States v. Gerth*, 991 F.2d 1428, 1430-31 (8th Cir. 1993); *United States v. Krause (In re Krause)*, 261 B.R. 218, 222 (B.A.P. 8th Cir. 2001).  Section 553(a) does not create a federal right of setoff.  Rather, it preserves, with certain exceptions, whatever right of setoff otherwise existed between the debtor and creditor before the bankruptcy was filed. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

---

        [4]  Debtor's line of credit ostensibly belonged to the bankruptcy estate, not Debtor, on the date of the post-petition transaction between Bank and Cronin Farms. 11 U.S.C. § 541(a).  If Bank issued post-petition credit on Debtor's behalf with Debtor's authority, Bank may hold a post-petition claim against Debtor directly, but not against the bankruptcy estate.

        [5]  Bank also argued in its answer it should have "the first right in and to the proceeds of the sales of livestock in the Trustee's adversary proceeding of 09-01018 to the extent of such money paid by or on behalf of [Bank], plus [Bank]'s costs, including reasonable attorney fees, and any accrued interest thereon."  That issue, however, will be resolved in *that* adversary proceeding.

For setoff purposes, the Court of Appeals has held "a debt arises when all transactions necessary for liability occur, regardless of whether the claim was contingent, unliquidated, or unmatured when the petition was filed." *Gerth*, 991 F.2d at 1433; *see also Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398-99 (9th Cir. 1996) (setoffs under § 553 run contrary to the fundamental bankruptcy principle of equal treatment of creditors). To be deemed a pre-petition debt, the claim must be "absolutely owed" pre-petition. *Gerth*, 991 F.2d at 1430-31 (quoting *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir. 1987)). "'The mutuality requirement is strictly construed…. The right to setoff under § 553 is permissive, not mandatory.' There can be no right to setoff where a creditor seeks to [set off] its claim against one party in satisfaction of a debt owed to a third party." *In re Cullen*, 329 B.R. 52, 57 (Bankr. N.D. Iowa 2005) (citations omitted).

Bank holds no right of setoff under § 553. The only two debts at issue – Cronin Farms' existing pre-petition claim against Debtor and Cronin Farms' potential damages award against Bank – are neither both pre-petition nor mutual.

Bank likewise has no right to subrogation under either 11 U.S.C. § 509 or South Dakota common law.[6] Under § 509(a), a party must show: (1) it is "liable with the debtor" on the debt; and (2) it has paid that debt. 11 U.S.C. § 509(a) (in relevant part); *see In re Frankum*, 399 B.R. 498, 504-05 (Bankr. E.D. Ark. 2009). Bank has shown neither element. Nothing in the record suggests Bank was liable with Debtor on Cronin Farms' pre-petition claim against Debtor. Moreover, as discussed above, any judgment against Bank in the state court lawsuit will be for damages to Cronin Farms caused by Bank, not for Debtor's pre-petition liability to Cronin Farms.

---

[6] The Court assumes for purposes of this decision, but does not decide, a party may be entitled to equitable subrogation under state law in a bankruptcy proceeding. *See In re Houston*, 409 B.R. 799, 808-10 (Bankr. D.S.C. 2009); *In re Frankum*, 399 B.R. 498, 504-05 (Bankr. E.D. Ark. 2009).

Consequently, any payment in full or partial satisfaction of that judgment will not be on account of Debtor's pre-petition liability to Cronin Farms.   Thus, Bank is not subrogated to Cronin Farms' pre-petition claim against Debtor under § 509.

Under South Dakota's common law, subrogation is an available remedy when "one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter."  *Application of Mach*, 25 N.W.2d 881, 883 (S.D. 1947) (citing 50 AM.JUR.SUBROGATION § 7).  Again, Bank has shown neither element.  Debtor cannot be said to be primarily liable for any judgment entered against Bank in the state court lawsuit, and neither equity nor good conscience would dictate Debtor satisfy that judgment.  If Bank is ordered to pay damages to Cronin Farms, it will be standing in its own shoes, not the bankruptcy estate's, when it pays Cronin Farms.  The state court will undoubtedly ensure Cronin Farms does not make a double recovery from both the bankruptcy estate and Bank for its original claim against Debtor, but it is up to the state court, not this Court, to assess and impose any damages arising from the post-petition transaction between Bank and Cronin Farms.

An appropriate order and judgment will be entered.

Dated:  June 21, 2010.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

**NOTICE OF ENTRY**
**Under Fed.R.Bankr.P. 9022(a)**

**This order/judgment was entered**
**on the date shown above.**

**Frederick M. Entwistle**
**Clerk, U.S. Bankruptcy Court**
**District of South Dakota**